FILED

**SCHAD BRANNON**
**5819 WISH AVE**
**ENCINO, CA 91316**
818 426 4280

2016 DEC 15  PM 2: 15

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA


**SCHAD E. BRANNON**

                         **Plaintiff,**

**Vs.**

CV16-09268 BRO(AGR)

CASE NO.: 09268 BRO(AGR)

**NMS CAPITAL ASSET MANAGEMENT, INC., NMS CAPITAL GROUP, LLC, TREVOR SALIBA, and the AMERICAN ARBITRATION ASSOCIATION, jointly and severally,**

                         **Defendants.**


## COMPLAINT TO COMPEL ARBITRATION


      **COMES NOW**, Schad E. Brannon ("Brannon"), Pro Se, and files this Complaint to Compel Arbitration and in addition, to:

      A.  Order Defendants NMS Capital Asset Management, Inc., NMS Capital Group, LLC and Trevor Saliba to Immediately Pay Required Arbitration Fees in pending AAA Arbitration No.: 01-15-0002-3191;

      B.  Order NMS Capital Asset Management, Inc., NMS Capital Group, LLC and Trevor Saliba to Pay Any and All Future Employer Required Arbitration Costs/Fees in pending AAA Arbitration No.: 01-15-0002-3191;

C.  Order NMS Capital Asset Management, Inc., NMS Capital Group, LLC and Trevor Saliba and/or American Arbitration Association to pay for Plaintiffs' required California Licensed Attorney in pending AAA Arbitration No.: 01-15-0002-3191;

D.  Order NMS Capital Asset Management, Inc., NMS Capital Group, LLC and Trevor Saliba and/or American Arbitration Association to Pay Incurred Fees of Claimants Former Chosen Representatives in pending in AAA Arbitration No.: 01-15-0002-3191; or

E.   In the Alternative Order that Claimants Former Chosen Authorized Representatives be allowed to Represent Plaintiff in the pending AAA Arbitration No.: 01-15-0002-3191.

In support of same, Plaintiff will show the following, to wit:

## THE PARTIES

1.  Plaintiff is an adult citizen of Encino, Los Angeles County, California.

2.  Defendant American Arbitration Association (hereinafter "AAA") is a Delaware corporation, is registered to do business in California and upon which service of process can be obtained by serving same upon its California Vice Presidents of Employment and Labor, John English, Patrick Tatum, or Michael R. Powell at the AAA office located at 725 South Figueroa, Suite 400, Los Angeles, CA 90017, and/or the same persons at the AAA office located at 45 E River Park Place W, Suite 308, Fresno, CA 93720.

3.  NMS Capital Asset Management, Inc. (hereinafter "NMS Capital Asset") is a Delaware corporation upon which process can be obtained by serving same upon its owner, Trevor Saliba at the office of NMS Capital Asset Management, Inc., 433 N. Camden Drive 4th Floor, Beverly Hills, California 90210.

2

4. NMS Capital Group, LLC (hereinafter "NMS Capital Group") is a Delaware corporation and upon which process can be obtained by serving same upon its owner, Trevor Saliba at the office of NMS Capital Group, LLC, 433 N. Camden Drive 4th Floor, Beverly Hills, California 90210.

5. Trevor Saliba (hereinafter "Saliba") is an adult resident citizen of Los Angeles, County, California and upon whom process can be obtained by serving same upon him at his place of work, 433 N. Camden Drive 4th Floor, Beverly Hills, California 90210.

6. When referring to the above named parties in paragraphs 3, 4, and 5 collectively, they shall be referred to as "the NMS Defendants".

## JURISDICTION

7. Jurisdiction is proper in this federal court as arbitrations are provided for by the Federal Arbitration Act.

## FACTUAL HISTORY

8. Plaintiff was precluded from filing a civil action to protect his interests due to and because of a mandatory arbitration clause in the employer promulgated agreements he executed. (See, **Exhibit 1,** 2010 Agreement **& Exhibit 2,** 2012 Agreement**)** Cover page and pertinent page of Agreements) Further, Plaintiff will show that though the employer promulgated agreement(s) stated he was an independent contractor, after consultation with an employment attorney/labor expert it was determined that under California law Brannon was most likely an employee whereupon in January 2015 Plaintiff submitted an employment arbitration to against the NMS Defendants via the AAA.

9. That the AAA informed Plaintiff that it "…cannot make any determinations regarding the classification of the individual as independent contractor or employee; therefore, the

3

AAA must proceed to administer this as a commercial matter under our Commercial Arbitration Rules." (See, **Exhibit 3,** email letter from AAA). That upon receiving that information, Plaintiff here contested that working status relationship to the agency that could determine his work status, the California Labor Commissioner ("CA Labor Commissioner"), and filed a claim there on or about February 2015.

10. Plaintiff will show that notwithstanding the fact that the NMS Defendants wholly failed to comply with the subpoenas duces tecum issued by the CA Labor Commissioner (on behalf of Brannon) a full and complete hearing was held before that agency in September 2015 whereupon after reviewing the documents and hearing the witnesses, the California Labor Commissioner, on or about October 15, 2015, ruled that Plaintiff here was indeed an employee under California law (See, **Exhibit 4,** Order of Labor Commissioner). Plaintiff will show that NMS Defendants did not appeal the ruling and same became absolute and final on or about November 14, 2015.

11. Plaintiff will show that shortly after the CA Order became final, he resubmitted his employment arbitration complaint to the AAA on or about January 7, 2016 and against the named NMS Defendants.

12. Plaintiff will show that when the arbitration was submitted, the AAA made an initial administrative determination that the dispute(s) arose from an employer promulgated plan which was determined by "… the AAA reviewing the documentation provided by the Plaintiff which included, but not limited to, the demand for arbitration, the parties' arbitration program or agreement, and any employment agreement(s) or contracts between the parties." Further, Plaintiff will show that the NMS employment agreement(s) included and mandated that California law would apply. Plaintiff will show that his arbitration

submission was accepted as an employment arbitration by the AAA on or about January

12, 2016.  (See, **Exhibits 5,** email letter from AAA)

13.  That AAA Employment Rules, For Disputes Arising Out of Employer Plans (i)

Filing Fees Cases Filed by Employee Against Employer, states:

> "In cases before a single arbitrator, **a non-refundable filing fee** capped
> in the amount **of $200 is payable in full by the employee** when a
> claim is filed, unless the plan provides that the employee pay less. **A
> non-refundable fee in the amount of $1,500 is payable in full by
> the employer**, unless the plan provides that the employer pay more.
> (**Emphasis added**)

Further, Plaintiff will show the same Employment Rules section provides:

> "The **employer's share is due as soon as the employee meets his
> or her filing requirements**, even if the matter settles." (**Emphasis
> added**)

14.  That at the time of filing the arbitration Plaintiff paid the required $200.00 employee

fee per AAA Employment Rules (Costs of Arbitration, For Disputes Arising Out of

Employer Plans) as provided and stated in Paragraph 13 above.

15.  That notice of the arbitration submission was sent to the named NMS Defendants and

Saliba.  (See, **Exhibit 5**, email letter dated January 12, 2016 to NMS Capital Asset

Management, Inc.)  Plaintiff will further show that along with the notice the AAA also

advised and requested (pursuant to AAA Employment Rules Costs of Arbitration

paragraph (i)), that the NMS Defendants pay the required $1,500.00 employer filing fee

inasmuch as this arbitration was based upon an employer promulgated plan/agreement.

Further, Plaintiff will show that NMS was to have the fee paid by on or about January 21,

2016 but failed to pay the fee on the due date or at any time or date thereafter.  Plaintiff

will further show that pursuant to AAA Employment Rule 47, "If…administrative charges

have not been paid in full… the AAA may suspend or terminate the proceedings".

16.   That inasmuch as the NMS Defendants had failed to pay its required employer filing fee, based on Rule 47 it would then be incumbent upon Plaintiff to pay same or the matter could be suspended or terminated.  Plaintiff will show that after a time he was able to pay the $1,500.00 and paid the employer's filing fee on Feb 1, 2016 (See, **Exhibit 6**, receipt of $1,425.00 payment of said fee amount, less $75.00 Plaintiff credit for over payment of Plaintiff's obligation.

17.   Notwithstanding NMS' total failure to follow the AAA rules that NMS had placed on Plaintiff, the NMS Defendants filed an Answer and Counterclaim on or about February 29, 2016.

18.   That the AAA appointed Carla Barboza as arbitrator on or about March 10, 2016 and set the initial Management Conference for May 6, 2016 but it was continued as the Arbitrator had not yet requested a deposit for her services.

19.   That AAA Employment Rules, 'For Disputes Arising Out of Employer Plans' provides in part,

> "Arbitrator compensation is not included as part of the administrative fees charged by the AAA. **The employer shall pay the arbitrator's compensation**…". (**Emphasis added**)

20.   That Plaintiff will show that a deposit request was made by the Arbitrator through the AAA to the NMS Defendants on May 16, 2016 for $2,250.00 for Arbitrator's fees.  The due date of the invoice to the NMS Defendants was May 23, 2016.  (See, **Exhibit** 7)

21.   That the NMS Defendants did not make the required payment by the due date though the AAA Employment Rules mandated that if the arbitration plan is employer promulgated, the employer shall pay all arbitrator fees (as well as other arbitrator expenses as will be shown infra).  Plaintiff will further show that pursuant to AAA Employment Rule 47,

"If...arbitrator compensation [has] not been paid in full... the arbitrator may order the suspension or termination of the proceedings".  Plaintiff will affirmatively show that in order to maintain the continuation of the arbitration proceeding, he again paid the requested $2,250.00 for the Arbitrators fee deposit and paid same on June 30, 2016.

22.  That the AAA rescheduled the Management Conference for August 6, 2015 at 2:30 PST.   That at the designated time, the persons acting as the chosen authorized representatives pursuant to AAA Employment Rule 19 were present on the call.  Also on the call was AAA Manager of ADR Services Denise Crow and Plaintiff.

23.  Plaintiff will show that Management Call began on time, and almost at the beginning of the teleconference after being identified, Arbitrator Barboza asked one of Plaintiff's chosen representatives (chosen pursuant to AAA Employment Rule 19), if he was an attorney to which he replied no whereupon he was told by Arbitrator Barboza that she did not want to hear from him since he was not a lawyer.

24.   Plaintiff will show that Arbitrator Barboza then asked Plaintiffs other chosen authorized representative if he was a lawyer to which an affirmative answered was provided whereupon the Arbitrator then asked that representative if he was licensed to practice in California to which a no reply was given. Arbitrator Barboza then spent the next few minutes advising that particular representative that he needed to be admitted to practice law in California in order to continue to represent Plaintiff Brannon in the arbitration.

25.  That after silencing one chosen representative and advising the other that he had to be admitted in California (or he would not be allowed to represent Plaintiff), the Management Conference call continued with the chosen authorized representative for the named NMS Defendants (there Respondents), Aaron Gundzik, a licensed California attorney,

7

complained to Arbitrator Barboza about the AAA accepted employment arbitration, and that he would be or wanted to submit a motion or other dispositive document but needed time to do so.

26.  Plaintiff will show that the remaining time of the conference call, the discussion surrounded how much the NMS Defendants should pay to have the motion or other dispositive document reviewed, considered and ruled upon by the Arbitrator.

27.  Plaintiff will show that AAA Employment Rule 19 clearly states without ambiguity:

> "Any party may be represented by counsel or **other authorized representatives."  (Emphasis added)**

Plaintiff will further show that at no time did Ms. Crow advise or inform Arbitrator Barboza that in an Employment Arbitration a party may be represented by a person or person of the party's choosing and further, neither dis Ms. Crow advise Arbitrator Barboza that by silencing one of Plaintiffs chosen representatives and telling the other, a lawyer licensed in Mississippi, that he needed to get admitted to the California Bar that Madame Arbitrator was violating Rule 19.

28.  That the Management Call ended on or about 3:26 PM PST after approximately one (1) hour as the parties agreed to continue the Management Conference teleconference for a week (until August 12, 2016) but the Parties without approval of the Arbitrator cancelled that date.

29.  Plaintiff will show that he submitted a Motion to the AAA on or about September 21, 2016 wherein it was requested that the AAA enforce its Employment Rules to make the NMS Defendants pay the employer mandated filing fees and arbitrator deposit/fees.

30.  That on October 5, 2016 Arbitrator Barboza ruled on the Motion referred to in 29, above, to wit:

> "Claimant's Demand is denied because … the AAA has no power to
> order or enforce an order that Respondent pay the arbitrator's fees. The
> issues related to the payment of fees, the appropriate parties to the arb-
> itration agreement and the claims to be arbitrated may be presented to
> this Arbitrator if Respondents or Claimant submit the necessary deposits.
> However, it is essential that everyone involved understand that **this Arb-
> itrator has no enforcement powers and any orders issued by this
> Arbitrator, should they need to be enforced, would have to be
> presented to a court of law**. Neither AAA nor this Arbitrator have
> the enforcement powers entrusted to our courts." (**Emphasis added**)

Plaintiff will further show that the Arbitrator ruled that if the NMS Defendants wanted to

submit a motion or other dispositive action to advise her on or before October 12, 2016 and

should the NMS Defendants want to proceed with the dispositive action, ***then*** the

Arbitrator would provide a fee deposit amount and a briefing schedule.

31. Plaintiff will show that on October 11, 2016 the NMS Defendants' through their chosen

authorized representative, a licensed California attorney, advised the AAA and Arbitrator

Barboza that NMS ***would pay*** the "… fees necessary for its motion" in an email, to wit:

> RE: Schad E. Brannon V. NMS Capital Asset Management, Inc. –
>     Case 01-16-0000-0477
> Oct 11 at 2:00 PM
> From  Aaron Gundzik <agundzik@gghslaw.com>
> To  DeniseCrow@adr.org,
>
> **Message body**
> Ms. Crow:
> Please notify the Arbitrator that in response to the October 5 Order,
> **NMS will pay fees necessary for its motion**. Please forward an
> estimate to my attention.
> Thank you.
> (**Emphasis added**)

32. Plaintiff will show that upon receiving the notice that the NMS Defendants would "pay

the fees necessary for its motion", the Arbitrator, again through the AAA, sent an email to

the arbitration parties dated October 14, 2016 that provided the briefing schedule and the

arbitrator's fee deposit. Specifically, the email stated:

> "**The employer has been billed $7,200.00** as a deposit to cover the arbitrator's anticipated compensation and expenses for this motion. This amount was determined by the arbitrator and **payment is to be received** by the AAA no later than **October 21, 2016.**" (**Emphasis AAA**)

33.   Plaintiff will show that a scant three (3) days later, on October 17, 2016, the NMS

Defendants, again by and through their chosen authorized California legal representative,

Mr. Gundzik, reneged on the agreement to pay the $7,200.00 as Mr. Gundzik's stated:

> **RE: Schad E. Brannon V. NMS Capital Asset Management, Inc. –**
> **Case 01-16-0000-0477**
> Oct 17 at 6:54 PM
>
> **From:** Aaron Gundzik <agundzik@gghslaw.com>
> **To:** "DeniseCrow@adr.org"
>
> Ms. Crow:
> Please see attached letter on behalf of Respondent NMS. As reflected in the letter, **NMS has reconsidered its position and determined that it will not deposit the $7,200 in arbitration fees requested** in your October 14 letter. (**Emphasis added**)

Further, Plaintiff will show that though the NMS Defendants reneged on the arbitrator

deposit, the NMS Defendants, in the letter that was attached to the email, requested the

AAA, Ms. Crow specifically, to do what is only within the jurisdiction of the Arbitrator,

rule on a dispositive matter(s)… and the NMS Defendants wanted those questions/rulings

answered **for free** by the AAA Case Administrator.

34.   Plaintiff will show that this pattern of the NMS Defendants promising to act and then

not so acting is their modus oporandi, i.e., just like NMS requiring/demanding arbitration

but then not paying the employer associated and required fees.   That with the NMS

Defendants reneging on the payment of the $7,200.00 deposit stated in Paragraph 33 above, the arbitration came to a halt which led Madame Arbitrator to advise Plaintiff that he could seek enforcement of the arbitration through the federal courts.

## COUNT I

### *Order NMS Defendants to Pay Filing Fees and Arbitrator Deposit*

35.  Plaintiff incorporates by reference Paragraphs 1-34 as if fully and completely copied herein in words and figures.

36.  Plaintiff will show that as stated in Paragraphs 13, 14, and 15 above, the NMS Defendants, after mandating arbitration if there was a dispute, did not pay the employers filing fee as required and further, did not pay the arbitrators initial deposit as set forth above in Paragraphs 19, 20, and 21.  The NMS Defendants have wholly failed to abide by the very arbitration rules that the NMS Defendants placed and demanded of Plaintiff in its agreement(s).

37.  Plaintiff will show that he has been advised by the Arbitrator in her order of October 5, 2016 that the AAA cannot 'force' an employer to pay the required fees when the arbitration claim is based upon an employer promulgated plan (see Paragraph 29, above). Further, Plaintiff will specifically show that Madame Arbitrator stated, "… [the] AAA has no power to order or enforce an order that Respondent pay the arbitrator's fees", and further ruled, "… it is essential that everyone involved understand that this Arbitrator has no enforcement powers and any orders issued by this Arbitrator, should they need to be enforced, would have to be presented to a court of law.  Neither AAA nor this Arbitrator have the enforcement powers entrusted to our courts."

11

38.  Plaintiff will show that based on the revelation made by Arbitrator Barboza in her Order of October 5, 2016, the AAA Employment Rules are basically worthless as they have "no teeth".  Plaintiff will further show that this lack of enforcement can only lead to (and no doubt has in the subject arbitration) an employer(s) that has produced an employer promulgated plan that demands and/or requires its employees arbitrate every dispute(s) through administration by the AAA and then simply ignore the notice to pay fees and costs associated with employer promulgated plans and leave the employee(s) such as Plaintiff to fend for himself.

39.  Plaintiff will show that this action is tantamount to a pre-textual employer promulgated plan and/or a fraud upon both the employee, here Plaintiff, and upon the AAA who has become an unaware facilitator of the pre-textual and/or fraudulent arbitration demand.

40.  Plaintiff will show that the NMS Defendants has not and has refused to pay the AAA Employment mandated filing fee of $1,500.00, the AAA stating in its Costs of Arbitration section:

> For Disputes Arising Out of Employer Plans:
> (i) Filing Fees - **Cases Filed by Employee Against Employer**
>
> "**A non-refundable fee in the amount of $1,500 is payable in full by the employer**, unless the plan provides that the employer pay more."

And, further,

> "**The employer's share is due** as soon as the employee meets his… filing requirements, …." (**Emphasis added**)

41.  Plaintiff will show that the AAA Employment Rule 46 "…may require deposits in advance of any hearings… including the arbitrator fee…" but that these NMS Defendants have also refused to pay the requested and mandated arbitrator deposit of $2,250.00.  Said

deposit was requested via an invoice from the AAA on or about May 16, 2016.  The AAA, again in its Costs of Arbitration section, states in part:

> "Arbitrator compensation is not included as part of the administrative fees charged by the AAA. **The employer shall pay the arbitrator's compensation…**". **(Emphasis added)**

Plaintiff will show that 'shall' expresses compulsion, obligation, necessity, or to be certain it does not express "maybe".  'Shall pay' means the employer SHALL PAY the arbitrator's compensation, there is not an option.  The AAA Employment Rules are clear and pursuant to those rules and/or mandates regarding an employer promulgated plan, those cost are past due for which Plaintiff now sues to compel.

42.  Plaintiff will show that he not paid both the employer required filing fee as well as the arbitrator's deposit the arbitration could have been terminated as AAA Employment Rule 47 provides for that scenario should fees not be paid in full. Plaintiff now sues the NMS Defendants to immediately reimburse those costs to Plaintiff and to compel the arbitration.

## COUNT II

### Order NMS Defendants to Pay Any and All Future Employer Required Arbitration Costs/Fees

43.  Plaintiff incorporates by reference Paragraphs 1-42 as if fully and completely copied herein in words and figures.

44.  Plaintiff will further show that due to and because of the past practice of the NMS Defendants not paying the required employer costs and/or promising to act and then not doing so, it is dubious as to whether or not the NMS Defendants will pay any future required and mandated costs of the employer promulgated arbitration, including but not limited to the payment of future arbitrator fees:

(ii) Hearing Fees - For each day of hearing held before a single arbitrator,

an administrative Fee of $350 is **payable by the employer**.

(iii) Postponement/Cancellation Fees - A fee of $150 is **payable by a party causing a postponement** of any hearing scheduled before a single arbitrator.

(iv) Hearing Room Rental - The hearing fees described above do not cover the rental of hearing rooms.  Hearing room rental fees **will be borne by the employer**.

(vi) Expenses - **All expenses of the arbitrator**, including required travel and other expenses, **and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer**. (**Emphasis added**)

Plaintiff sues for an Order that the NMS Defendants immediately pay any and all of the

above fees as requested by the AAA in its administrative capacity.

## COUNT III

### *Order NMS Defendants and/or the AAA to Pay Plaintiff/Claimant's Arbitration Attorney Fees for California Licensed Attorney*

45.  Plaintiff incorporates by reference Paragraphs 1-44 as if fully and completely copied

herein in words and figures.

46.  Plaintiff will show that AAA Employment Rule 1 states in part,

"The parties **shall be deemed** to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA")…".

Plaintiff Brannon will show that he "deemed" nothing as the Agreement(s) he executed

was an employer promulgated contract of adhesion.  Plaintiff will further show that it was

NMS that "deemed" to have consented to the AAA Rules by mandating arbitration and

selecting the AAA to administer any dispute, yet it is the NMS Defendants that have to

date been continuously ignoring.

14

47.  Plaintiff will show that he was precluded from filing suit in a civil court by the NMS employer promulgated agreement(s) that he executed (see, Paragraph 8.1 of the Agreements, **Exhibits 1 & 2**) but instead was required to submit to arbitration.  Plaintiffs 'chosen authorized representatives' have been advised that they cannot represent his interests since one is not a lawyer and the other, a lawyer, is not licensed in California. That consequently Plaintiff cannot have his "chosen representatives" but instead is forced to hire a California licensed attorney which he cannot afford or dismiss the arbitration whereupon his rights and claims are lost and NMS wins by default.

48.  That inasmuch as the NMS Defendants mandated arbitration and "deemed" the Rules to apply, this issue, Count III, is a direct and proximate cause of the arbitration requirement in the executed Agreements upon which Plaintiff sues for this Court to order the NMS Defendants to pay for the California licensed attorney fees in order that Plaintiffs interests are protected and justice will be done.

49.  Plaintiff will further show that the AAA in not enforcing and/or standing up to protect its Employment Rule 19 (allowing a party to be represented by its "chosen authorized representative") is denying Plaintiff from protecting his interests in a "cost effective" manner, one of the stated ideals of arbitration, along with expedited resolution.  Further, Plaintiff will show that the subject arbitration claim is quite convoluted and complicated and contains over 25 claims which are best known by his chosen representatives who have been engaged and have worked on this matter for over two years.

50.  Plaintiff will show that pursuant to the actions by the Arbitrator during the Management Conference call in August 2016 both of his chosen authorized representatives

have withdrawn as each do not wish to be drawn into the potential issue of unauthorized practice of law in California.

51. Plaintiff will show that though he could act Pro Se as noted above, the arbitration claim is quite convoluted and complicated and as such, Plaintiff is in great need of an experienced labor/employment individual to handle the arbitration submission, claim as there is little doubt that the NMS Defendants will be represented by the best representation those Defendants can afford.

52. Plaintiff will show that AAA knew or should have known that California law was applicable in the subject arbitration as California law was required in the NMS agreement(s). Further, the AAA knew or should have known that Plaintiff (or indeed, any arbitration claimant) would be precluded from having a representative that was not a California licensed attorney as the Bribrower ruling was published in or about 1998 (18 years ago) and two (2) years AFTER the AAA Employment Rules were first established and/or provided to the public.

53. That the AAA as part and parcel of its duties as administrator did not state in its Employment Rule 19 or indeed, in any Employment Rule, that should an arbitration be submitted in California a parties only representative *must* be a California licensed attorney. Plaintiff will show that the AAA knew one of Plaintiffs chosen representatives was not an attorney and upon learning that the AAA should have notified Plaintiff that Rule 19 in its current form (Amended and Effective November 2009) is not applicable in California and that the non-California lawyer would not be able to represent Plaintiff. Plaintiff contents that the AAA was grossly negligent in its administrative duties for not doing so. Further, Plaintiff will show that the AAA was grossly negligent in not providing the phrase "***unless***

*prohibited by state law*" to AAA Employment Rule 19 as it has with other representative notifications in certain other AAA arbitration sections, to wit:

> a)  Construction Arbitration Rule 27, "Any party may participate without representation (*pro se*), or by counsel or any other representative of that party's choosing, **unless such choice is prohibited by applicable law;**

> b)  Consumer Arbitration Rule 25, "Any party may participate in the arbitration without representation, or may be represented by counsel or other authorized representative, **unless such choice is prohibited by applicable law**";

> c)  Commercial Arbitration Rule 26, "Any party may participate without representation (*pro se*), or by counsel or any other representative of the party's choosing, **unless such choice is prohibited by applicable law**." **(Emphasis added all)**

Each of the above AAA Rules puts a party on notice that a state law may preclude a party from being able to actually choose the authorized representative of his choice, which no doubt means that a party must be represented by an attorney licensed in that respective state.  AAA negligently did not include that phrase in the Employment Rules which has led to this issue and for which Plaintiff sues.

54.  Plaintiff will show that AAA Rule 19 does not contain that last phrase ("unless such choice is prohibited by applicable law") and consequently the ruling by the Arbitrator for Plaintiff to have a California licensed attorney is now a requirement, one that Plaintiff cannot afford.  Madame Arbitrators ruling has turned AAA administered arbitrations in California into '**arbigation**' as the requirement for licensed attorneys has turned arbitrations into litigation.  That requirement is in direct opposition to AAA Employment Rule 19 and inasmuch as the AAA wholly failed to provide proper notice that said Rule19 was not applicable in arbitrations in California it was grossly negligent and the AAA must

be held responsible to pay for Plaintiffs required California licensed attorney fees or Plaintiff would face irreparable harm.

55. Plaintiff will show that in preparation for this instant civil complaint, he discovered that the AAA does provide the noted phrase "***unless prohibited by state law***" in its Employment Mediation Rules section (Rule M-4) which states in part:

> "Any party may participate without representation *(pro se),* or by any representative of that party's choosing, or by counsel, **unless such choice is prohibited by applicable law**." **(Emphasis added)**

Plaintiff will show that the AAA found it important enough to include the phrase for mediations but not for employment arbitrations and that lack of notification has and is causing Plaintiff mental anguish and financial nightmares as he does not have the funds to hire a California licensed lawyer to represent and protect his interests. Plaintiff will show that the NMS Defendants have extremely deep pockets and the NMS Defendants using its those deep pockets and a pre-textual employment promulgated plan has successfully insulated themselves from the arbitration.

56. Plaintiff will show that AAA Employment Rule 43, provides:

> "As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable. AAA fees shall be paid in accordance with the Costs of Arbitration section. The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. **(To ensure that you have the most current information, see our website at** www.adr.org**). (Emphasis added)**

Plaintiff will show that collecting the fees and keeping them is quite important to the AAA as there is no less than twelve (12) pages dedicated to administrative fees in the 2016 edition of the AAA Employment Rules (pages 31 - 43).

57.  Plaintiff will show that conversely, the AAA has not and did not update and/or provide website info as to its Rule 19 to put parties on notice that if a party submits an arbitration in California, the chosen representative must be a California licensed attorney.   Further, Plaintiff will show that the AAA dedicates zero pages to notifying an employee that under California law that party cannot choose the representative that he wants.

58.  Plaintiff will further show that the AAA finds it so important in keeping parties abreast of the latest AAA fee schedule it provides a website one can visit for the latest updates, but with regard to actually notifying California parties that they really cannot pick or choose a representative, the AAA is silent.   That the AAA knew or should have known that California changed the representative issue in 1998 which has now left Plaintiff in a dire economic position and without the ability of hiring a licensed California attorney to protect his interests for which Plaintiff sues.

59.  Plaintiff will show that the AAA promotes itself in its Employment Rules as a:

> "…not-for-profit, public service organization dedicated to the resolution
> of disputes through…arbitration, … with over 30 offices worldwide…".

Plaintiff will show that the civil court system (both state and federal) are immune from liability as they are government established entities funded by taxpayers to serve justice to all.   Further, Plaintiff will show that the financial existence of the AAA and its ability to operate is based solely upon the filing/administrative fees paid by those who use its administrative services, and to run 30 worldwide offices there must be a huge amount of fees coming into the AAA, but as a "private non-profit" the AAA does not want the liability for its errors or actions/inactions after taking those fees.   Plaintiff will show that notwithstanding those big fees, the AAA in its Employment Rules 42(b) and (d)

respectively, severed the association from any liability from those who pay to use its administrative services with a simple stroke of the pen:

> **b. "… the AAA** nor any arbitrator in a proceeding under these rules is or **shall [not] be considered a necessary or proper party in judicial proceedings relating to the arbitration.**

> **d.** Parties to an arbitration under these rules shall be deemed to have consented that **neither the AAA** nor any arbitrator **shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.**

60.  Plaintiff will show on information and belief that it is the apparent belief of the AAA that once it gets a party's filing fee it can act with impunity; without oversight; and without enforcing its own rules and by virtue of Rule 42 not face liability.  Plaintiff again states that he did not "deem" anything to the AAA, as the agreement(s) he signed were NMS promulgated agreements of adhesion.  Plaintiff will show that the AAA Employment Rules are perfect for employers who wish to hide behind the AAA whose rules have no teeth and to which the association takes full immunity from its actions and/or inactions.

61.  Plaintiff will show that that the actions of the AAA amounts to 'gross negligence' in its administration of the subject arbitration claim to date, i.e., the AAA wholly failed to put Plaintiff on notice that he could not choose his representative in California unless that representative was/is a California licensed attorney.  That gross negligence now leaves Plaintiff in dire financial straits without a representative to act to protect his interests as he cannot afford to retain California counsel.

62.  Plaintiff will show that the Federal Arbitration Act ("FAA") from which the AAA's standing emanates, states clearly that a party can choose its own authorized representative.

**COUNT IV**

*Order NMS Defendants and/or AAA to Pay Plaintiff's Former*
*Duly Chosen Authorized Representatives Fees*

63. Plaintiff incorporates by reference Paragraphs 1-62 as if fully and completely copied herein in words and figures.

64. Plaintiff will show that in its employer promulgated agreements/plans NMS mandated the arbitration method to resolve disputes and further, named AAA to administer the arbitration.

65. Plaintiff will show that the AAA accepted the arbitration submission and determined that it was an employment arbitration.

66. Plaintiff will show that he surmised after reading AAA Rule 19 that he could choose any person(s) to act as his 'authorized representative(s), but the AAA negligently failed to provide notice to Plaintiff that he could not have as his representative any person who was not a licensed member of the California State Bar Association.

67. Plaintiff will show that his chosen representatives have withdrawn from the arbitration as one was not a lawyer and the other, though a lawyer, was not licensed in California.

68. Plaintiff will show that his chosen representatives worked diligently on his behalf on all matters necessary in his representation, including but not limited to research and document preparation for the pending arbitration but not in an effort to practice law in California. Pursuant to and warranted by the doctrine of quantum meruit, equity demands that they be paid for their time inasmuch as it was not to a fault of theirs that they were not allowed to proceed.

## COUNT V

*Order in the alternative to allow Plaintiffs former chosen representatives*
*to represent Plaintiff in the pending AAA arbitration matter*

69.  Plaintiff incorporates by reference paragraphs 1 thru 68 as fully and completely copied herein.

70.  Plaintiff will show that AAA Employment Rules allow a party to pick and choose his authorized representative but in the pending arbitration submission, the Arbitrator will not allow Plaintiffs chosen authorized representatives protect his interests unless they members of the California Bar Association.

71. Plaintiff cannot afford to retain California counsel and without counsel or a person who has knowledge of labor law and this arbitration, Plaintiff will be at a serious disadvantage in his claims against the NMS Defendants and Mr. Saliba who does have the where with all to hire the best legal mind in California.

72.  Plaintiff will show that AAA Employment Rule 19 provides he be able to choose his representative(s) and he should be able to that in the alternative.

**WHEREFORE, PREMISES CONSIDERED** Plaintiff prays that this Court,

A.  Order the NMS Defendants to immediately pay the AAA Employment Rules employer filing fees and arbitrator deposit in AAA Arbitration No.:  01-15-0002-3191 and further;

B.  Order the NMS Defendants are to pay any and all future AAA Employment Rules employer required costs and should the requested costs not be paid, that the NMS Defendants be held in Contempt of Court after a filing under oath by Plaintiff;

C.  Order NMS Defendants and/or the AAA to Pay Plaintiff's (Arbitration Claimant's) arbitration legal fees (representative fees) for the California licensed attorney he chooses to represent Plaintiff in AAA Arbitration No.:  01-15-0002-3191;

D.  Order NMS Defendants and/or AAA to pay the incurred representative fees of Plaintiff's (Arbitration Claimant's) former chosen representatives in AAA Arbitration No.:  01-15-0002-3191; or

E.  In the alternative Order that Plaintiff's former chosen representatives be allowed to represent Plaintiff in the pending AAA Arbitration No.:  01-15-0002-3191, and lastly,

F.  Plaintiff prays for any and all other relief that this Court deems meet and proper after a hearing on this cause.

Respectfully submitted on this the 15 day of December, 2016.

Schad Brannon, Plaintiff Pro Se

# PLAINTIFF EXHIBIT LIST

1.      2010 Employment Agreement.

2.      2012 Employment Agreement.

3.      The American Arbitration Association Case No.: CASE No.: 01-15-0002-3191
        AAA cannot make any determinations regarding the classification of the
        individual as independent contractor or employee; (Letter)

4.      California Department of Labor: CASE No.: 06-115149 JH
        Determination of Employee Status; Finding and Award in favor of Plaintiff
        Brannon vs. NMS. [Brannon was in fact an employee]

5.      American Arbitration Association Letter of Acceptance of Labor Compliant.
        CASE No.: 01-16-0000-0477

6.      American Arbitration Association's Employer's (NMS Obligation) payment for
        Labor claim. [NMS refused to pay] Brannon (Employee) Paid
        CASE No.: 01-16-0000-0477

7.      NMS (Employer) Obligation / Invoice for AAA Labor Compliant [NMS again
        refused to Pay] Brannon (Employee) Paid.



## INVESTMENT ADVISOR REPRESENTATIVE AGREEMENT

THIS AGREEMENT is made on this 11th day of June 2010, by and between **NMS CAPITAL ASSET MANAGEMENT, INC...**, a Corporation organized under the laws of the State of California , ("NMS"), whose address is 433 North Camden Drive, 4th Floor, Beverly Hills, CA 90210 and **SCHAD E. BRANNON**, whose address is 5819 Wish Avenue, Encino, CA 91316 , ("Representative").

### RECITALS

WHEREAS, NMS Capital Asset Management, Inc., ("NMS") is a company that provides private wealth management, insurance and investment advisory services: and

WHEREAS, NMS desires to engage the services of the Representative for the purpose of soliciting sales all in accordance with the terms and conditions contained herein.

IN CONSIDERATION of the mutual covenants and conditions herein and intending to be legally bound hereby the parties hereto agree as follows:

### COVENANTS AND CONDITIONS

**I.   ENGAGEMENT AND NATURE OF SERVICES**

1.1   NMS is engaging the services of Representative and Representative agrees to be engaged, as an Independent contractor, for the purpose of soliciting sales of NMS's private wealth management, insurance and investment advisory services.

1.2   This is an at will agreement that may be terminated by either party, with or without cause. Representative shall return any and all property of NMS immediately upon termination of this Agreement by Representative or NMS, Including but not limited all confidential information (as defined below) as well as all marketing and other materials supplied by NMS.

1.3   NMS reserves the right to adjust compensation, including compensation relating to customers that you already signed. Adjustments to the compensation structure may be necessary in the event that our costs or margins or other circumstances change.  This can apply to future orders from customers that you signed up as well as to new customers.

1.4   Representative acknowledges that he/she is a full time, Representative for NMS and an independent contractor, and as such, representative is not entitled to receive any health care or other benefits.

1.5   Representative agrees to carefully protect such trade secrets, whether or not this Agreement is cancelled or terminated.

1.6   In the course of acting as a representative, Representative may acquire information concerning the clients and prospective clients of NMS and its affiliates, information concerning the computer programs, data, special hardware, product hardware, software applications, processing methods, ideas, improvements, inventions and other trade secrets and information belonging to NMS and its affiliates and principals or relating to the affairs of NMS and its affiliates  Representative agrees that all such information shall be maintained as strictly confidential and that all such information, and the trade secrets, are the property of NMS, its principals and affiliates, and that the use, misappropriation or disclosure of the trade secrets or confidential information will constitute a breach of this Agreement and will cause irreparable injury to NMS and its affiliates.  Representative



agrees not to disclose the trade secrets or confidential information to others or use the trade secrets or the confidential information to Representative's own advantage or the advantage of others or allow others to do so.  Representative shall not in any manner disseminate any trade secrets or confidential information to any third party or use this information for any other purpose, without the express prior written consent of NMS. Representative agrees that NMS may not be able to be compensated by money damages for the consequences of disclosure of the trade secrets or confidential information and Representative agrees that NMS is entitled to seek to enforce these provisions by injunction and any other forms of legal and equitable relief.

1.7     Representative further agrees that the names, addresses, telephone numbers and all other information that identifies or aids in identifying existing or prospective clients and other sources of business of NMS or its affiliates, is the exclusive property of NMS and its affiliates and constitutes confidential information within the meaning of this Agreement and shall also be treated as confidential information hereunder.

## II.     PERFORMANCE

2.1     Representative shall use his/her best efforts to promote sales of NMS's Products and Services. Representative shall be given the title of **Managing Director, Wealth Management**. This title is to identify the representative's position within NMS's hierarchy and it in no way authorizes the Representative to enter into any agreement with anyone which shall encumber or bind NMS in any way. Please refer to Exhibit "A" for a detailed hierarchy plan.

2.2     NMS prides itself in being a reputable firm and a purveyor of quality products and services, and it is essential Representative display good decorum and manners in dealing with existing and potential clients and with the public in general.

2.3     Representative is a full-time, independent contractor, and may engage in other pursuits provided that Representative receives written approval and said activities are in accordance with Representative's U4 form which has been submitted through NMS's Broker Dealer and filed with the Securities and Exchange Commission (if applicable)

2.4     Representative shall not make any untrue verbal, oral or written representation or statement of any nature whatsoever in his/her activities under this Agreement.

2.5     Representative is responsible for its own expenses associated with business development, sales and marketing, training, licensing etc., other than those provided by NMS as outlined in this agreement.

2.6     NMS shall not be obligated to incur any cost, expenses or other liability in regard to Representative, other than as provided in this Agreement.

## III.     PAYMENT AND COMMISSIONS

3.1     Representative shall be entitled to receive a commission, as described in the commission schedule attached hereto and made a part thereof as Exhibit "A", or a future schedule that is communicated to representative in verbal or written form in the event of a change in the compensation structure, provided however, that any and all such amounts shall not be payable until payment for the sale upon which commissions are payable is received and paid NMS's Broker Dealer of record.

3.2     In the event of termination of this Agreement for any reason, representative shall be entitled only to commissions earned up to the date of the termination.



26

3.3 In the event of termination of this Agreement for any reason, representative agrees that all NMS clients that were obtained through NMS company sponsored marketing programs, including but not limited to company purchased sales leads, sponsored seminars, advertising, client referrals etc., shall remain NMS clients. The representative agrees that they will not pursue any of aforementioned category clients and in doing so, will be in breach of this agreement.

3.4 In the event of termination of this Agreement for any reason, representative is free to take any and all clients that were obtained at representatives sole efforts provided they do not fall within the client category as outlined in Section 3.3 of this agreement.

3.5 Prior to or in the event of termination of this Agreement for any reason, representative agrees that they will not attempt to directly contract, associate or engage with NMS's Broker Dealer of record for a period of (1) one year from the date of termination without NMS's written consent. In the event the representative attempts to circumvent NMS under any circumstance within the one year period, representative shall be in breach of this agreement.

3.6 Prior to or In the event of termination of this Agreement for any reason, representative is free to pursue a Broker Dealer relationship with any available Broker Dealer willing to work with representative provided said broker dealer is NOT working with NMS in any capacity.

## IV. REPRESENTATIVE CORPORATE EXPENSES

4.1 Representative shall be assigned a corporate voice mail box and email. Representative agrees that any NMS lines of communication shall be used for business use *only* and not personal use in any way.

4.2 Representative shall be entitled to use the NMS corporate office for in-person client meetings, telephone calls, office meetings etc. Representative may use or be assigned a designated work space (cubicle, work station, office) at NMS's office. NMS may require the representative to reimburse NMS for these expense or representative may request to use this NMS space. In either event, the terms and conditions of all reimbursements shall be outlined in Exhibit "B" of this agreement.

## V. TERMS OF EMPLOYMENT

5.1.1 The employment of Representative pursuant to the terms and conditions of this agreement is "at will" and may be terminated by either NMS or Representative at any time for any reason. Upon termination, representative must honor a non-solicit covenant in the communication and/or solicitation of all NMS clients for a period of five years.

## VI. EFFECTS OF PRIOR AGREEMENTS

6.1 This Agreement supersedes any prior agreement between NMS and Representative.

## VII. CHANGES TO THIS AGREEMENT

7.1 This Agreement may be changed or modified with mutual written consent.



**VIII.**   **SETTLEMENT BY ARBITRATION**

8.1     Any claim or controversy that arises out of or relates to this agreement, or the breach of it, shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Judgment upon the award rendered may be entered in any court with jurisdiction.

**IX.**   **LIMITED AFFECT OF WAIVER BY COMPANY**

9.1     Should NMS waive breach of any provision of this Agreement by the Representative, that waiver will not operate or be construed as waiver of further breach by the Representative.

**X.**   **SEVERABILITY**

10.1    If, for any reason, any provision of this Agreement shall be held invalid, all other provisions of this Agreement shall remain in effect. If this Agreement is held invalid and can not be enforced, then to the full extent permitted by the Law any prior agreement between NMS (or any predecessor thereof) and the Representative shall be deemed reinstated as if this Agreement had not been executed.

**XI.**   **ASSUMPTION OF AGREEMENT BY NMS'S SUCCESSORS OR ASSIGNEES**

11.1    NMS's rights and obligations under this Agreement will inure to the benefit and be binding upon NMS''s successors or assignees.

**XII.**   **JURISDICTION**

12.1    This Agreement shall be construed in accordance with the Laws of the State of California.

SIGNED THIS _23_ DAY OF _June_____ , 2010

Trevor M. Saliba
Managing Director
NMS Capital Asset Management, Inc.

Schad E. Brannon
Representative



28

## EXHIBIT "A"

| Position / Title | Gross Annual Production | I/A NMS Fee Commission | B/D & Insurance Commission |
|---|---|---|---|
| Managing Director | $500,000 + | 90% | 85% |
| | $250,000 – 499,999 | 90% | 80% |
| | $100,000 – 249,999 | 85% | 75% |
| | $0 – 99,000 | 80% | 70% |

*Commissions percentages are based on gross commissions earned and paid out by NMS and/or Broker Dealer on all products and services.*

*Representative's Position or Commission level will not be reduced once achieved.*

EXHIBIT "B"

Representative shall reimburse NMS for the following corporate expenses which shall be due on the 1st of each month or due upon receipt:

| | |
|---|---|
| Email / Tel. Extension / Voice Mail | $20.00 |
| E&O Insurance (RIA): | $75.00 (subject to change upon annual renewal) |
| FINRA / State Licenses | At Cost / TBD as needed |
| Technical Support (Monthly) | At Cost / TBD as needed |
| Cubicle / Work Station | At Cost / TBD as needed |
| Office Space | At Cost / TBD as needed |
| Telemarketing | At Cost / TBD as needed |
| Administrative Support | At Cost / TBD as needed |
| Advertising | At Cost / TBD as needed |

SIGNED AND AGREED:

_____
Representative

6/23/2010
Date

30

### PROFESSIONAL LIABILITY COVERAGE (E&O Insurance)

We have concluded our search for the best Professional Liability Coverage for the calendar year of 2010. We are able to secure coverage with Gotham Insurance Company. We are able to:

- *Preserve our complete product line coverage*
- *Maintain our current annual limits of $1M per claim, $1M aggregate*
- *Keep our policy costs from any increases*

**Fees for E&O coverage are for the full calendar year and are NOT refundable. Advisors are responsible for any balances due of the full payment of E&O Insurance fees if they terminate prior to December 31, 2010.**

We continue a monthly payment option for coverage in an effort to accommodate all our Advisors. Please sign this form as indicated below and **return to us no later than January 15th, 2010.**

I will send in a payment of $75.00 per month by the 10th of each month for a total of $900. You can take the payment from my earned commissions/fees and I will send you a check covering any debit balance. If I do not pay as indicated by the monthly due date or upon termination, the entire balance through December 31, 2010 becomes due and payable.

Advisor Signature

Sched Brennan
Print Name

6/23/2010
Date



## INVESTMENT ADVISOR REPRESENTATIVE AGREEMENT

THIS AGREEMENT is made on this 1st day of February 2012, by and between **NMS CAPITAL ASSET MANAGEMENT, INC...**, a Corporation organized under the laws of the State of California , ("NMS"), whose address is 433 North Camden Drive, 4ᵗʰ Floor, Beverly Hills, CA 90210 and **SCHAD E. BRANNON**, whose address is 5819 Wish Avenue, Encino, CA 91316 , ("Representative").

### RECITALS

WHEREAS, NMS Capital Asset Management, Inc., ("NMS") is a company that provides private wealth management, insurance and investment advisory services: and

WHEREAS, NMS desires to engage the services of the Representative for the purpose of soliciting sales all in accordance with the terms and conditions contained herein.

IN CONSIDERATION of the mutual covenants and conditions herein and intending to be legally bound hereby the parties hereto agree as follows:

### COVENANTS AND CONDITIONS

**I.   ENGAGEMENT AND NATURE OF SERVICES**

1.1    NMS is engaging the services of Representative and Representative agrees to be engaged, as an Independent contractor, for the purpose of soliciting sales of NMS's private wealth management, insurance and investment advisory services.

1.2    This is an at will agreement that may be terminated by either party, with or without cause. Representative shall return any and all property of NMS immediately upon termination of this Agreement by Representative or NMS, including but not limited all confidential information (as defined below) as well as all marketing and other materials supplied by NMS.

1.3    NMS reserves the right to adjust compensation, including compensation relating to customers that you already signed. Adjustments to the compensation structure may be necessary in the event that our costs or margins or other circumstances change. This can apply to future orders from customers that you signed up as well as to new customers.

1.4    Representative acknowledges that he/she is a full time, Representative for NMS and an independent contractor, and as such, representative is not entitled to receive any health care or other benefits.

1.5    Representative agrees to carefully protect such trade secrets, whether or not this Agreement is cancelled or terminated.

1.6    In the course of acting as a representative, Representative may acquire information concerning the clients and prospective clients of NMS and its affiliates, information concerning the computer programs, data, special hardware, product hardware, software applications, processing methods, ideas, improvements, inventions and other trade secrets and information belonging to NMS and its affiliates and principals or relating to the affairs of NMS and its affiliates  Representative agrees that all such information shall be maintained as strictly confidential and that all such information, and the trade secrets, are the property of NMS, its principals and affiliates, and that the use, misappropriation or disclosure of the trade secrets or confidential information will constitute a breach of this Agreement and will cause irreparable injury to NMS and its affiliates.  Representative

agrees not to disclose the trade secrets or confidential information to others or use the trade secrets or the confidential information to Representative's own advantage or the advantage of others or allow others to do so.  Representative shall not in any manner disseminate any trade secrets or confidential information to any third party or use this information for any other purpose, without the express prior written consent of NMS. Representative agrees that NMS may not be able to be compensated by money damages for the consequences of disclosure of the trade secrets or confidential information and Representative agrees that NMS is entitled to seek to enforce these provisions by injunction and any other forms of legal and equitable relief.

1.7   Representative further agrees that the names, addresses, telephone numbers and all other information that identifies or aids in identifying existing or prospective clients and other sources of business of NMS or its affiliates, is the exclusive property of NMS and its affiliates and constitutes confidential information within the meaning of this Agreement and shall also be treated as confidential information hereunder.

## II.   PERFORMANCE

2.1   Representative shall use his/her best efforts to promote sales of NMS's Products and Services. Representative shall be given the title of **Managing Director, Wealth Management**. This title is to identify the representative's position within NMS's hierarchy and it in no way authorizes the Representative to enter into any agreement with anyone which shall encumber or bind NMS in any way. Please refer to Exhibit "A" for a detailed hierarchy plan.

2.2   NMS prides itself in being a reputable firm and a purveyor of quality products and services, and it is essential Representative display good decorum and manners in dealing with existing and potential clients and with the public in general.

2.3   Representative is a full-time, independent contractor, and may engage in other pursuits provided that Representative receives written approval and said activities are in accordance with Representative's U4 form which has been submitted through NMS's Broker Dealer and filed with the Securities and Exchange Commission (if applicable)

2.4   Representative shall not make any untrue verbal, oral or written representation or statement of any nature whatsoever in his/her activities under this Agreement. Representative shall hold NMS harmless in the event of any dispute that arises in any manner, including but not limited to legal, regulatory, monetary, etc. that is a result of Representatives actions both prior to and during its association with NMS.

2.5   Representative is responsible for its own expenses associated with business development, sales and marketing, training, licensing etc., other than those provided by NMS as outlined in this agreement.

2.6   NMS shall not be obligated to incur any cost, expenses or other liability in regard to Representative, other than as provided in this Agreement.

## III.   PAYMENT AND COMMISSIONS

3.1   Representative shall be entitled to receive a commission, as described in the commission schedule attached hereto and made a part thereof as Exhibit "A", or a future schedule that is communicated to representative in verbal or written form in the event of a change in the compensation structure, provided however, that any and all such amounts shall not be payable until payment for the sale upon which commissions are payable is received and paid NMS's Broker Dealer of record.

3.2 In the event of termination of this Agreement for any reason, representative shall be entitled only to commissions earned up to the date of the termination.

3.3 In the event of termination of this Agreement for any reason, representative agrees that all NMS clients that were obtained through NMS company sponsored marketing programs, including but not limited to company purchased sales leads, sponsored seminars, advertising, client referrals etc., shall remain NMS clients. The representative agrees that they will not pursue any of aforementioned category clients and in doing so, will be in breach of this agreement.

3.4 In the event of termination of this Agreement for any reason, representative is free to take any and all clients that were obtained at representatives sole efforts provided they do not fall within the client category as outlined in Section 3.3 of this agreement.

3.5 Prior to or in the event of termination of this Agreement for any reason, representative agrees that they will not attempt to directly contract, associate or engage with NMS's Broker Dealer of record for a period of (1) one year from the date of termination without NMS's written consent. In the event the representative attempts to circumvent NMS under any circumstance within the one year period, representative shall be in breach of this agreement.

3.6 Prior to or In the event of termination of this Agreement for any reason, representative is free to pursue a Broker Dealer relationship with any available Broker Dealer willing to work with representative provided said broker dealer is NOT working with NMS in any capacity.

## IV. REPRESENTATIVE CORPORATE EXPENSES

4.1 Representative shall be assigned a corporate voice mail box and email. Representative agrees that any NMS lines of communication shall be used for business use *only* and not personal use in any way.

4.2 Representative shall be entitled to use the NMS corporate office for in-person client meetings, telephone calls, office meetings etc. Representative may use or be assigned a designated work space (cubicle, work station, office) at NMS's office. NMS may require the representative to reimburse NMS for these expense or representative may request to use this NMS space. In either event, the terms and conditions of all reimbursements shall be outlined in Exhibit "B" of this agreement.

## V. TERMS OF EMPLOYMENT

5.1.1 The employment of Representative pursuant to the terms and conditions of this agreement is "at will" and may be terminated by either NMS or Representative at any time for any reason. Upon termination, representative must honor a non-solicit covenant in the communication and/or solicitation of all NMS clients for a period of five years.

## VI. EFFECTS OF PRIOR AGREEMENTS

6.1 This Agreement supersedes any prior agreement between NMS and Representative.

## VII. CHANGES TO THIS AGREEMENT

7.1 This Agreement may be changed or modified with mutual written consent.

**VIII.    SETTLEMENT BY ARBITRATION**

8.1    Any claim or controversy that arises out of or relates to this agreement, or the breach of it, shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Judgment upon the award rendered may be entered in any court with jurisdiction.

**IX.    LIMITED AFFECT OF WAIVER BY COMPANY**

9.1    Should NMS waive breach of any provision of this Agreement by the Representative, that waiver will not operate or be construed as waiver of further breach by the Representative.

**X.    SEVERABILITY**

10.1    If, for any reason, any provision of this Agreement shall be held invalid, all other provisions of this Agreement shall remain in effect. If this Agreement is held invalid and can not be enforced, then to the full extent permitted by the Law any prior agreement between NMS (or any predecessor thereof) and the Representative shall be deemed reinstated as if this Agreement had not been executed.

**XI.    ASSUMPTION OF AGREEMENT BY NMS'S SUCCESSORS OR ASSIGNEES**

11.1    NMS's rights and obligations under this Agreement will inure to the benefit and be binding upon NMS"s successors or assignees.

**XII.    JURISDICTION**

12.1    This Agreement shall be construed in accordance with the Laws of the State of California.

SIGNED THIS _1st_ DAY OF _February_, 2012


_____
Richard D. Tabizon
EVP, Operations / CCO
NMS Capital Asset Management, Inc.

_____
Schad E. Brannon
Representative


_____
Trevor M. Saliba
Chairman/CEO
NMS Capital Asset Management, Inc.

## EXHIBIT "A"

| Position / Title | Gross Annual Production | I/A NMS Fee Commission | Insurance Commission |
|---|---|---|---|
| Managing Director | $0 + | 80% | 80% |

Commissions percentages are based on gross commissions earned and paid out to NMS on all business directly generated by Representative. In the event there are more than one party responsible for the origination and ongoing management of the account, it will be divided accordingly and upon mutual agreement of all Advisors associated with that account.

Representative's Position or Commission level will not be reduced once achieved.

36

Representative shall reimburse NMS for the following corporate expenses which shall be due on the 1st of each month or due upon receipt:

| | |
|---|---|
| Email / Tel. Extension / Voice Mail | $25.00 |
| Email Retention / Archive | $25.00 |
| E&O Insurance (RIA): | $85.00 (subject to change upon annual renewal) |
| FINRA / State Licenses | At Cost / TBD as needed |
| Technical Support (Monthly) | At Cost / TBD as needed |
| Cubicle / Work Station | At Cost / TBD as needed |
| Office Space | At Cost / TBD as needed |
| Telemarketing | At Cost / TBD as needed |
| Administrative Support | At Cost / TBD as needed |
| Advertising | At Cost / TBD as needed |

SIGNED AND AGREED:

_____
Representative

2/1/2012
Date

PROFESSIONAL LIABILITY COVERAGE (E&O Insurance)

37

We have concluded our search for the best Professional Liability Coverage for the calendar year of 2012. We are able to secure coverage with Gotham Insurance Company. We are able to:

- *Preserve our complete product line coverage*
- *Maintain our current annual limits of $1M per claim, $1M aggregate*
- *Keep our policy costs from any increases*

**Fees for E&O coverage are for the full calendar year and are NOT refundable. Advisors are responsible for any balances due of the full payment of E&O Insurance fees if they terminate prior to December 31, 2012.**

We continue a monthly payment option for coverage in an effort to accommodate all our Advisors. Please sign this form as indicated below and **return to us no later than January 15th, 2010.**

I will send in a payment of $75.00 per month by the 10th of each month for a total of $900. You can take the payment from my earned commissions/fees and I will send you a check covering any debit balance. If I do not pay as indicated by the monthly due date or upon termination, the entire balance through December 31, 2010 becomes due and payable.

_____
Advisor Signature

Schad Brennan
Print Name

2/1/2012
Date



AMERICAN ARBITRATION ASSOCIATION®  |  INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043
Telephone: (856)435-6401



January 9, 2015

Don Rose, Esq.
3255 Losee Road
North Las Vegas, NV 89030
Via Email to: zevodon@yahoo.com

Case Number: 01-15-0002-3191
Schad E. Brannon
-vs-
NMS Capital Management, LLC, Trevor Saliba, and
Richard D. Tabizon

Dear Mr. Rose:

Upon review of the documents submitted in the above-referenced matter, it appears that this dispute arises from an independent contractor agreement. The American Arbitration Association cannot make any determinations regarding the classification of the individual as independent contractor or employee; therefore, the AAA must proceed to administer this as a commercial matter under our Commercial Arbitration Rules. These rules are available on our website, www.adr.org.

The parties are free to raise the issue of classification to the arbitrator once selected.

Under our Commercial fee schedule, the filing fee is based on the amount of the claim for compensatory damages. The Claimant has not provided us with a claim amount for compensatory damages; therefore, we request that Claimant provide us with correspondence indicating a claim amount. We request that Claimant send a copy of that correspondence to Respondent.

If Claimant cannot provide an exact claim amount, we will accept a statement indicating a range in which the claim amount falls. The filing fee will be based on the highest amount included in the range. Should the claim amount increase later in the arbitration proceedings such that the new claim amount falls in a higher filing fee bracket, the filing fee will retroactively increase.

As per our rules, if Claimant cannot provide us with either an exact or estimated claim amount, we will apply the fee for claims up to $10,000,000.00.

When submitting the letter amending the demand for arbitration, please also submit payment for the fee corresponding to that claim amount under either the standard or flexible fee schedule.

Payment may be submitted via check, money order, or credit card. Money orders and checks should be made payable to the American Arbitration Association and sent to the address above for Case Filing Services. To pay by credit card, please email me at ShoneckA@adr.org for a copy of our credit card authorization form. Unfortunately, we cannot accept credit card payments over the phone.

When submitting payment, please reference the above case number to ensure that payment is properly applied.

The AAA's administrative fees are based on filing and service charges. Arbitrator compensation is not included in this schedule. The AAA may require arbitrator's compensation deposits in advance of any hearings.

Please note: you are receiving this letter because our administrative filing requirements have not been met; therefore no answering statement or counterclaim is due at this time. Once all filing requirements have been met, you will be notified by a case manager of the appropriate response dates.

**Payment and correspondence stating a claim amount should be submitted on or before January 21, 2015.** Absent receipt of those items by that date, the Association will return all documents submitted and not consider this matter properly filed. Upon receipt of these items, the Association will proceed with administration in accordance with the rules.

Please feel free to contact me if you have any questions.

Sincerely,

Adam Shoneck
Supervisor
856-679-4610
ShoneckA@adr.org

*Supervisor Information: Tara Parvey, 856-679-4602, ParveyT@adr.org*

CC:    NMS Capital Asset Management
       433 North Camden Drive
       4th Floor
       Beverly Hills, CA 90210
       Via mail

STATE OF CALIFORNIA
DEPARTMENT OF INDUSTRIAL RELATIONS
DIVISION OF LABOR STANDARDS ENFORCEMENT



## CERTIFICATION OF SERVICE BY MAIL
### (C.C.P. 1013A) OR CERTIFIED MAIL

I, _____Ruby Gutierrez_____, do hereby certify that I am a resident of or employed in the County of _____Los Angeles_____, over 18 years of age, not a party to the within action, and that I am employed at and my business address is:

**LABOR COMMISSIONER, STATE OF CALIFORNIA**
**320 W. 4th Street, #450**
**Los Angeles,  CA 90013**
**Tel:  (213) 620-6330   Fax: (213) 897-4059**

I am readily familiar with the business practice of my place of business for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On _____October 14, 2015_____ at my place of business, a copy of the following document(s):

_**Order, Decision or Award of the Labor Commissioner**_

was(were) placed for deposit in the United States Postal Service in a sealed envelope, by first class mail_____, with postage fully prepaid, addressed to:

NOTICE TO:   **Schad Brannon**
**5819 Wish Avenue**
**Encino, CA  91316**

and that envelope was placed for collection and mailing on that date following ordinary business practices.

*I certify under penalty of perjury that the foregoing is true and correct.*

Executed on:   _____October 14, 2015_____  at  _____Los Angeles_____, California

STATE CASE NUMBER:  06-115149 JH                   *Ruby Gutierrez*
                                                   Ruby Gutierrez

DLSE 544/PLT. (3/06)          CERTIFICATION OF MAILING                L.C. 98

| LABOR COMMISSIONER, STATE OF CALIFORNIA<br>Department of Industrial Relations<br>Division of Labor Standards Enforcement<br>320 W. 4th Street, #450<br>Los Angeles, CA 90013<br>Tel: (213) 620-6330  Fax: (213) 897-4059 | For Court Use Only: |
|---|---|
| Plaintiff:   Schad Brannon | |
| Defendant:   NMS Capital Asset Management Inc,<br>A CALIFORNIA CORPORATION | Court Number |

| State Case Number<br>06 - 115149  JH | ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER |
|---|---|

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

**DATE: September 17, 2015**              ☐ **CONTINUED TO:**

**CITY: 320 W. 4th Street, #450  Los Angeles, CA 90013**

2. IT IS ORDERED THAT: **Plaintiff take nothing by virtue of his/her complaint.**

| | | |
|---|---|---|
| $ | 0.00 | for wages (with lawful deductions) |
| $ | 0.00 | for liquidated damages pursuant to Labor Code Section 1194.2 |
| $ | 0.00 | Reimbursable business expenses |
| $ | 0.00 | for interest pursuant to Labor Code Section(s) 98.1(c), 1194.2 and/or 2802(b), |
| $ | 0.00 | for additional wages accrued pursuant to Labor Code Section 203 as a penalty *and that same shall not be subject to payroll or other deductions.* |
| $ | 0.00 | for penalties pursuant to Labor Code Section 203.1 which *shall not be subject to payroll or other deductions.* |
| $ | 0.00 | other (specify): |
| $ | **0.00** | **TOTAL AMOUNT OF AWARD** |

3.   The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4.   The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document.  Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery.  If service on the parties is made by mail, the ten (10) day appeal period shall be extended by five (5) days.  For parties served outside of California, the period of extension is longer (See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner.  If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California.  Labor Code Section 98.2(c) provides that if the party seeking review by filing an appeal to the court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal.  An employee is successful if the court awards an amount greater than zero.

PLEASE TAKE NOTICE: Labor Code Section 98.2(b) requires that as a condition to filing an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall first post a bond or undertaking with the court in the amount of the ODA; and the employer shall provide written notice to the other parties and the Labor Commissioner of the posting of the undertaking.  Labor Code Section 98.2(b) also requires the undertaking contain other specific conditions for distribution under the bond.  While this claim is before the Labor Commissioner, you are required to notify the Labor Commissioner *in writing* of any changes in your business or personal address within 10 days after any change occurs.

* Los Angeles Superior Courthouse

111 North Hill Street  Rm. 102
Los Angeles, CA 90012

**DATED: October 2, 2015**

LABOR COMMISSIONER, STATE OF CALIFORNIA

BY: _____

Tricia Banegas                    HEARING OFFICER

42

1

2

3

4

5

BEFORE THE LABOR COMMISSIONER

OF THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| Schad Brannon | ) | |
| Plaintiff | ) | Case No. 06-115149-JH |
| | ) | |
| Vs. | ) | |
| | ) | ORDER, DECISION OR AWARD |
| NMS Capital Asset Management, Inc., | ) | OF THE LABOR COMMISSIONER |
| A California corporation | ) | |
| Defendant | ) | |

## BACKGROUND

The Plaintiff filed an initial claim with the Labor Commissioner's office on February 4, 2015. The complaint raises the following allegations:

Issue 1:   Wages for 2720 hours at $45.00 per hour earned from February 4, 2012 through June 5, 2013, claiming $122,400.00;

Issue 2:   Liquidated damages pursuant to Labor Code §1194.2(a);

Issue 3:   Interest pursuant to Labor Code §98.1 and §1194.2(a);

Issue 4: Waiting time penalties pursuant to Labor Code §203 for 30 days at the rate of $360.00 per day for an indeterminate number of days not to exceed 30 days.

A hearing was conducted in Los Angeles, California, on September 17, 2015, before the undersigned-hearing officer designated by the Labor Commissioner to hear this matter. Plaintiff appeared and was represented by Don Rose. James Forman attended as a witness for the Plaintiff.  Defendant was represented by Attorney Blake Lindmann and its CEO, Trevor Saliba.

43

1   Due consideration having been given to the testimony, documentary evidence, and
2   arguments presented, the Labor Commissioner hereby adopts the following Order,
3   Decision or Award.

4

5

6   ## FINDINGS OF FACT

7   Plaintiff, Schad Brannon, alleged that he was employed by the Defendant, NMS
8   Capital Asset Management, Inc., a California corporation for the period June 2010 to June
9   5, 2013 to perform personal services as an Investment Advisor in the County of Los
10   Angeles, California, under the terms of a written agreement.  Defendant is a financial
11   services firm that provides financial consulting, investment management, investment
12   banking services, and life insurance services to the general public.

13   Plaintiff performed different job duties such as provide financial advice to
14   Defendant's clients, recruit new clients into Defendant's business, sell life insurance, and
15   market research.  Plaintiff was paid a percentage of sales depending on production or
16   services sold.  Plaintiff did not perform work for any other business entity during the time
17   he worked for the Defendant and was restricted from working for other companies.  The
18   parties entered into a written agreement referencing Plaintiff as being an independent
19   contractor in sections of the agreement as well being an employee in other sections.  An
20   addendum to the agreement outlines restrictions to Plaintiff regarding engaging with
21   other businesses as follows: Plaintiff shall not engage in any business activity for which he
22   is not properly licensed; Plaintiff shall not engage in any outside business activity without
23   prior written authorization from the Defendant; Plaintiff must present all new clients to
24   Defendant and obtain its approval prior to engaging with that new client; and among
25   other things.  Plaintiff was provided a work station, office space, email address, telephone
26   and voicemail for which he was charged a fee.

27

44

Plaintiff testified that he was required to work set hours, from 9:00 am to 5:00 pm, and was expected to be at the office Monday through Friday. If Plaintiff was absent, he was also expected to call in and report his absence. Plaintiff occasionally worked from home. Plaintiff was questioned regarding the claimed hours and if he discounted time off taken as vacation or sick time or company observed holidays. Plaintiff did not discount these hours and agreed to reduce the hours claimed by 80 hours of vacation, 24 hours of sick time, and federally observed holidays (11 days or 88 hours during the claimed period). Based on Plaintiff's testimony of working 8 hours per day, five days per week, less the discounted hours for time not worked, Plaintiff would have worked a total of 2,576 hours during the claimed period.

Based on a document Plaintiff created himself titled, "Profit & Loss Statement for Shad Brannon, NMS Capital Management", he was paid a total of $38,895.00 during the claimed period. When asked to explain the purpose of the document, Plaintiff testified that he presented this to his mortgage company for the purpose of reporting income received.

Plaintiff claims that he is entitled to be compensated at the rate of $45.00 per hour. The hourly rate is derived from the work Plaintiff performed on the Yi Sang project wherein the Defendant specifically promised to pay said rate for this particular project only.

It is the Defendant's position that Plaintiff was an independent contractor and that the written agreement signed by both parties clearly supports their position. Defendant contends that in this type of industry, it is common practice that financial advisors are classified as independent contractors. Defendant further contends Plaintiff set his own work schedule and it did not have any control over his daily activities. Although Defendant provided Plaintiff with all tools to carry out his job duties, it required Plaintiff to pay a monthly fee pursuant to the written agreement. Furthermore, Plaintiff was issued a form 1099.

In response to the hourly rate of $45.00, Defendant agreed that it paid this rate for the hours Plaintiff worked in August and September 2012 for working on the Yi Sang project. At no other time, Plaintiff was promised or paid an hourly rate of pay; rather Plaintiff was paid a commission based on his sales.

## LEGAL ANALYSIS

At issue is the nature of the working relationship between the parties; whether Plaintiff was an independent contractor or an employee of the Defendant. In determining whether an individual providing service to another is an independent contractor or an employee, there is no single determinative factor. Rather, it is necessary to closely examine the facts of each service relationship and then apply the "multi-factor" or "economic realities" test adopted by the California Supreme Court in *S.G. Borello & Sons, Inc. v Dept of Industrial Relations* (1989)48Cal.3d 341. While the right to control the work remains a factor, the *Borello* court identified the following additional factors that must be considered:  (1) Whether the person performing services is engaged in an occupation or business distinct from that of the principal; (2) Whether or not the work is part of the regular business of the principal; (3) Whether the principal or the worker supplies the instrumentalities, tools and the place for the person doing the work; (4) The skill required in the particular occupation; (5) The method of payment, whether by the time, a piece rate or the job; (6) The alleged employee's opportunity for profit or loss depending on his managerial skill; (7) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (8) The length of time for which the services are to be performed; (9) The degree of permanence of the working relationship; (10) The alleged employee's investment in the equipment or materials required by his task; (11) Whether or not the parties believe they are creating an employer-employee relationship.

46

In asserting that a worker is an independent contractor, the Defendant carries the burden of proof. The party seeking to avoid liability has the burden of proving that the individual whose services he/she has retained are independent contractors rather than employees. In other words, there is a presumption of employment.

In this case, there are a few factors which mitigate towards a finding of independent contractor status. However, Borello cautions that no one factor is determinative and how the factors are weighed will depend on the specific facts in each case. Plaintiff being issued a form 1099 might indicate that an independent contractor relationship existed. However, the fact that a person who provides services is paid as an independent contractor, that is, without payroll deductions and with income reported by an IRS form 1099 rather than a W2 is of no significance whatsoever in determining employment status. The other factor which may indicate an independent contractor relationship existed is the written agreement entered into by the parties. However, the existence of a written agreement purporting to establish an independent contractor relationship is not, in itself the single determinative factor, and the Labor Commissioner must look behind any such agreement in order to examine the facts that characterize the parties' actual relationship. The written agreement itself is confusing at best as the Plaintiff is referenced as being both an independent contractor in certain sections of the agreement while also being referenced as an employee in other parts.

Defendant has not met the burden of proving Plaintiff was an independent contractor. Plaintiff was not free to engage in work or enter into an agreement with other business entities as the written agreement expressly prohibited Plaintiff from doing so. Plaintiff must present and obtain approval from the Defendant prior to engaging with a potential client. Plaintiff was not engaged in an occupation or business that was different from the Appellant's business. The Plaintiff's duties were part of the regular business of the Appellant. The overriding factor is that the person performing the work is not engaged in occupations or businesses distinct from that of the Defendants. Rather,

1  Plaintiff's work is the basis for the Appellant's business.  Appellant is in the business of
2  providing financial consulting, investment management, investment banking services, and
3  life insurance services to the public and Plaintiff conducted the service on the Defendant's
4  behalf.  Regarding control of the day-to-day functions, although Defendant may not have
5  provided detailed or day-to day supervision of the Plaintiff, Plaintiff had experience in the
6  field making detailed supervision unnecessary.  An employee-employer relationship will
7  be found if the principal retains pervasive control over the operation as a whole, the
8  worker's duties are an integral part of the operation, and the nature of the work makes
9  detailed control unnecessary.   [Yellow Cab cooperative v. Worker's Compensation
10  Appeals Board (1991) 226 Cal.App.3d 1288].  Accordingly, finding is that Plaintiff was an
11  employee of the Defendant.

12      The next issue to determine is the rate of pay to which Plaintiff is entitled.  In
13  establishing the basis of a claim, the burden is on the Plaintiff to prove that a certain
14  promise of compensation was made.  Where the employer denies that the claimed rate or
15  compensation was promised, and Plaintiff has not provided any independent evidence
16  such as witness testimony or documentation which verifies the rate of pay or promised
17  compensation, that burden of proof has not been met.  Plaintiff did not present any
18  documentary evidence or any witness testimony to corroborate his allegation of being
19  promised $45.00 per hour.  Plaintiff was paid $45.00 per hour for performing work on the
20  Yi Sang Project.  Beyond the work performed on this project, there is no evidence to
21  support that Plaintiff was promised an hourly rate of pay much less $45.00 per hour.
22  Accordingly, Plaintiff shall be entitled to the state-mandated minimum wage rate.  During
23  the claimed period, the minimum wage was set at $8.00 per hour and any hours worked
24  will be awarded at that rate.

25      The other issue to address is the number of hours Plaintiff worked.  Plaintiff based
26  the number of hours claimed on the assumption that he worked 8 hours daily, Monday
27  through Friday, during the claimed period for a total of 2,720 hours.  However, upon

1  questioning it was evident that Plaintiff did not account for hours not worked as a result
2  of time off taken for vacation, sick time, or company observed holidays.   Plaintiff
3  stipulated to subtracting 80 hours of vacation time, 24 hours of sick time, and federally
4  observed holidays during the claimed period which totaled 11 days or 88 hours.  As a
5  result, a total of 192 hours must be subtracted from the claimed 2,720 hours equaling 2,528
6  hours worked.

7      Assuming Plaintiff worked a total of 2,528 hours and based on the minimum wage
8  rate of $8.00 per hour, Plaintiff earned a total of $20,224.00.  However, Plaintiff's own
9  documentary evidence shows that he was paid $38,895.00.  As such, Plaintiff has been
10  fully paid for all hours worked and is not entitled to further compensation.  Plaintiff takes
11  nothing on his claim for unpaid wages.

12      As Plaintiff's claims for interest, liquidated damages, and waiting time penalties
13  rises and falls on the finding of unpaid wages and because there is no finding of unpaid
14  wages such claims are also dismissed.

15

16                                CONCLUSION

17      For all of the reasons set forth above, IT IS HEREBY ORDERED that the Plaintiff
18  take nothing by virtue of his complaint.

19

20

21  Dated: October 2, 2015

22                                Tricia D. Banegas
                                 Hearing Officer
23

24

25

26

27



AMERICAN
ARBITRATION
ASSOCIATION®

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043
Telephone: (856) 435-6401



January 12, 2016

Don Rose
5819 Wish Avenue
Encino, CA 91316
Via Email to: zevodon@yahoo.com

Trevor M. Saliba
NMS Capital Asset Management
433 North Camden Drive
4th Floor
Beverly Hills, CA 90210
Via Email to: trevor.saliba@nmscapital.com

Case Number: 01-16-0000-0477

Schad E. Brannon
-vs-
NMS Capital Asset Management, Inc.
NMS Capital Group, LLC, and Trevor Saliba

Dear Parties:

Upon review of the documents submitted in the above-referenced matter, the AAA will administer this dispute as arising from an employer-promulgated plan, and the case will be administered in accordance with the Employment Due Process Protocol of the AAA Employment Arbitration Rules, a copy of which can be found on the AAA website, www.adr.org.

In cases before a single arbitrator, a non-refundable filing fee, capped in the amount of $200.00, is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A non-refundable fee in the amount of $1,500.00 is payable in full by the employer, unless the plan provides that the employer pay more.

This acknowledges receipt of a portion of the filing fee in the amount of $200.00, from the claimant. Accordingly, we request that respondent remit the balance of the filing fee in the amount of $1,500.00.

Payment may be submitted via check, money order, or credit card. Money orders and checks should be made payable to the American Arbitration Association and sent to the address above for Case Filing Services. To pay by credit card, please email me for a copy of our credit card authorization form. Unfortunately, we cannot accept credit card payments over the phone. When submitting payment, please reference the above case number to ensure that payment is properly applied.

The AAA's administrative fees are based on filing and service charges. Arbitrator compensation is not included in this schedule. The AAA may require arbitrator's compensation deposits in advance of any hearings. Unless the employee chooses to pay a portion of the arbitrator's compensation, the employer shall pay such compensation in total.

Payment should be submitted on or before January 21, 2016. Upon receipt of the balance of the filing fee, the Association will proceed with administration in accordance with the rules.

Should the parties wish to engage in mediation administered by AAA in accordance with its Employment Mediation Procedures before arbitration, AAA will preserve the arbitration filing and initiate the mediation process upon receipt of a partial fee of $500 from respondent. Should the parties later desire to proceed to arbitration, the parties would be required to meet any outstanding filing requirements. If mediation at this stage is of interest to the parties, all parties should confirm in writing their agreement to abate the filing before the above deadline.

Please note: no answering statement or counterclaim is due at this time.



Please do not hesitate to contact me should you have any questions.

Sincerely,

*/s/ Adam Shoneck*

Adam Shoneck
Case Filing Specialist
Direct Dial: (856) 679-4610
Email: shonecka@adr.org
Fax: (877) 304-8457

*Supervisor Information: Tara Parvey, Director, ParveyT@adr.org*

51

 **AMERICAN ARBITRATION ASSOCIATION®**

 INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

## CREDIT CARD AUTHORIZATION

*EX # 6*

The information below must be completed in order to process your payment.

**AAA CASE NUMBER:** 01-16-0000-0477

**PARTY NAME:** _Brannon vs NMS Capital Mgt, Capital Grp, Saliba._

**OTHER:**   PUBLICATIONS ☐   EDUCATION PROGRAM ☐   PANEL FEES ☐   INVOICES ☐

**TOTAL AMOUNT TO BE CHARGED:** $ 1,425.00

*NMS obligation paid by Brannon*

### CARD HOLDER INFORMATION

☑ VISA   ☐ MASTERCARD   ☐ AMERICAN EXPRESS

**CARD NUMBER:** 4209730013991420    **EXPIRATION DATE:** 01 / 19   **CCV#:** 412

**NAME ON CARD: (Please Print)** Schad E. Brannon

**CARDHOLDER'S ADDRESS:** 5819 Wish Ave    **CITY AND STATE:** Encino, CA

**ZIP CODE:** 91316

**AUTHORIZED CARDHOLDER'S SIGNATURE**    **PRINTED NAME** SCHAD E. BRANNON    **DATE** 2-1-2016

If you wish to pay specific invoices other than the full amount due please list here:

| SPECIFIC INVOICE NUMBERS TO BE PAID | INVOICE DATE | AMOUNT |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |



AMERICAN ARBITRATION ASSOCIATION'  |  INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION'

13727 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972)702-8222
Fax: (855)267-4082

| Statement Date | Amount Currently Due |
|---|---|
| 23-May-16 | $2,250.00 |
| Case # | |
| 01-16-0000-0477-2-LO | |

Payment is due upon Receipt

## Detail Invoice/Statement

Ex # 7

Trevor M. Saliba
NMS Capital Asset Management
433 North Camden Drive
4th Floor
Beverly Hills, CA 90210

Representing: NMS Capital Asset Management, Inc.
Re: Schad E. Brannon
Vs.
NMS Capital Asset Management, Inc.
NMS Capital Group, LLC, and Trevor Saliba

Please detach and return with Payment to Above Address          Please Indicate Case No. on Check

---

AMERICAN ARBITRATION ASSOCIATION'  |  INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION'

13727 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972)702-8222
Fax: (855)267-4082

Trevor M. Saliba
NMS Capital Asset Management
433 North Camden Drive
4th Floor
Beverly Hills, CA 90210

Representing: NMS Capital Asset Management, Inc.
Re: Schad E. Brannon
Vs.
NMS Capital Asset Management, Inc.
NMS Capital Group, LLC, and Trevor Saliba

| Statement Date | Case # | Previous Balance | Credits | New Charges | Statement Balance |
|---|---|---|---|---|---|
| 23-May-16 | 01-16-0000-0477 | $0.00 | $0.00 | $2,250.00 | $2,250.00 |

| Date | Ref # | Description | Amount | Credits | Balance | Due Date |
|---|---|---|---|---|---|---|
| 17-May-2016 | 11775267 | Arbitrator's Compensation covering 5 Hours for Preliminary Matters | $2,250.00 | | $2,250.00 | 23-May-2016 |

Remarks    For any inquiries please call: (559)490-1873

Please mail check to    13727 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972)702-8222
Fax: (855)267-4082

| Statement Balance | Balance Currently Due |
|---|---|
| $2,250.00 | $2,250.00 |

Please Indicate Case No. on check

*NMS obligation Paid by Brannon again* (handwritten)

---

SCHAD E BRANNON
6819 WISH AVE
ENCINO, CA 91316-1459

139

90-8200/3222
24

6/30/2016

PAY TO THE ORDER OF  American Arbitration Assn          $ 2,250.00

Two thousand two hundred fifty even ————— DOLLARS

SCHOOLSFIRST
FEDERAL CREDIT UNION

MEMO 01-16-0000-0477-2-LO          SB

⑈322282001⑈401236276703⑈00139

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☑ )

SCHAD BRANNON

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

**(b)** County of Residence of First Listed Plaintiff Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Schad Brannon     818 426 4280
5819 Wish Ave
Encino, CA 91316

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multidistrict Litigation - Transfer

☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☐ No    ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

To enforce the Federal Arbitration Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 890 Other Statutory Actions | ☑ 190 Other Contract | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**    Case Number:    CV 16-09268

CV-71 (07/16)    CIVIL COVER SHEET    Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino County | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | C |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court**?     ☑ NO     ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☑ NO     ☐ YES

If yes, list case number(s): _____

Civil cases are related when they (check all that apply):

☑ A. Arise from the same or a closely related transaction, happening, or event;

☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☑ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

A civil forfeiture case and a criminal case are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

---

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**          DATE: *12-15-2016*

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

*Trevor Saliba   433 N Camden Dr. 4th Floor Beverly Hills CA 90210*
*NMS Capital  433 N. Camden Dr. 4th Floor  Beverly Hills, CA 90210*
*American Arbitration Association  725 South Figueroa, Suite 400 LA CA 90017*
*American Arbitration Association   45 East River Park Place N, Suite 308 Fresno CA 93720*

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |